## Case No. 3,689.
### DAY et al. v. PHELPS et al.
[6 Chi. Leg. News, 61.]

Circuit Court, D. Indiana.    Nov. Term, 1872.

BILL OF REVIEW—RELIEF AGAINST DEFAULT DECREE—ESTOPPEL—SERVICE OF PROCESS.

1. Where, on a bill filed against numerous defendants to enforce subscriptions to the capital stock of a railroad company, all who contested their liability were successful, and all parties had for years considered any liability at an end, a court of equity will go to the verge of its authority to prevent the operation of a decree against defendants who were never regularly served with process, and for whom counsel without authority and without their knowledge entered an appearance and filed pleadings, but did not follow the defense.

2. Service on a defendant by leaving a copy of the process at his residence, it not appearing that it was left with any person, was not a valid service under the 13th rule of practice in the courts of equity of the United States.

3. The fact of giving bail after decree is not necessarily estoppel and release of all errors.

4. Where it is evident from the pleadings and evidence in the original case that there was no just claim against the petitioners in review, and that they had the same equities as the other defendants, all of whom had been released and discharged, the court may consider such facts even on a bill of review, in order to prevent the enforcement of such decree.

In equity. These were two bills of review filed by Silas C. Day and Ezekiel R. Day

against John Phelps, Putnam, Burke, and others, and growing out of a decree rendered in this court in July, 1869, in the case of New Albany v. Burke, reported in 11 Wall. [78 U. S.] 96, where some of the facts are stated. It is there said that there was a decree rendered against the railroad company and the city, and the bill was dismissed as to the other defendants. This is not quite correct, as a decree was rendered also against these complainants at the same time—against Silas C. Day for $3,026, and against Ezekiel R. Day for $6,230—although it was provided that no execution should issue against them if the city of New Albany paid the amount found due to the complainants in that suit. In fact, however, executions issued against the Days, and they gave what is termed in the Indiana practice "replevin bail." These decrees were for subscriptions to the stock of the New Albany and Sandusky City Junction Railroad Company, though as to others who were in precisely the same condition the bill was dismissed. Ezekiel R. Day appeared by counsel, and what purported to be an answer and cross-bill was filed by counsel, the contents of which, he alleges, were unknown to him prior to the decree. This answer and cross-bill set forth that besides the $5,000 on the list of the stock which others (as to whom the bill was dismissed) had subscribed, he had subscribed a much larger sum, all of which and a portion of the $5,000 he had paid. To this answer and cross-bill a demurrer was sustained, and there appeared no further pleading by him up to the date of the decree. Prior to the decree a reference was made to a master, who reported that E. R. Day owed on his stock subscription the amount for which the decree was rendered, $6,230, but the language of the decree is, "And that there is due to said railroad company from Ezekiel R. Day, upon his subscription to the stock of said railroad company, as stated in said bill and in his answer, for principal and interest, the sum of six thousand two hundred and thirty dollars." In fact, the bill alleged that the amount was $4,700, with interest from January 1, 1855. The following was the marshal's return to the subpoena on S. C. Day: "Feb. 11, 1868. Served by * * * copy left at the residence of S. C. Day." On the 28th of March, 1868, appearance was entered by counsel for many defendants, including S. C. Day. But this was without authority from him, and it satisfactorily appeared that he never employed counsel, and the bill of review for him alleged that he never was in fact served with process, and never knew that it had been left at his residence. There was no other appearance or pleading by S. C. Day, and on the day the decree was rendered he was defaulted. The recital in the decree as to him was "that there is due to said railroad company from Silas C. Day, the sum of three thousand and twenty-six dollars upon his subscription to the stock of

said railroad company, as stated in said bill of complaint." The city of New Albany and the other defendants appealed from the decree, and the complainants in that suit took a cross-appeal because the court had dismissed the bill as to the defendants other than the city and railroad company. But the supreme court took no notice of the argument on this point or of the cross-appeal, but reversed the decree and remanded the cause, with instructions to dismiss the bill as to the city of New Albany, on two grounds: First, that a settlement and compromise which the city had made with the railroad company was valid; second, that the complainants had been guilty of laches in filing their bill.

The bill in the case of S. C. Day was founded on these alleged errors: 1. That there was no jurisdiction of the person, and no sufficient service of subpoena. 2. That the circuit court of Floyd county, where there had been litigation connected with the subject matter of the controversy, had exclusive jurisdiction of the case. 3. That the record did not sufficiently show an indebtedness to the railroad company. 4. That Putnam, Burke et al., had lost their supposed equity by laches. The bill in the case of E. R. Day was founded on the same alleged errors, except the first. Further facts are stated in the opinion.

Baker, Hord & Hendricks and Joseph E. McDonald, for petitioner in review.

Putnam, Burke & Porter and Harrison & Hines, for respondents.

DRUMMOND, Circuit Judge. There are some things which we may assume as true in our investigations of the questions growing out of these bills of review. One is, that the decrees rendered against the Days were for their subscriptions to the stock of the railroad, made under what were termed the "articles of association," which provided for the transfer to the city of all the stock taken by the subscribers except three hundred dollars. Other subscribers with the Days had answered, and this court held them not liable. If the Days had put in the same answer, they also must have been held free from liability. Another is, that all the parties, the railroad, the city, and the subscribers, treated all the stock, except the three hundred dollars to each subscriber, as transferred and merged in the subscription of four hundred thousand dollars of stock made by the city. A third and a corollary to the foregoing is, that as early as 1854 or 1855, if not some years before, and prior to the judgment on which the creditors' bill was filed, the railroad company ceased to regard the association as subscribers to the stock, the three hundred dollars having been paid by each, as indebted to the company for the balance of that stock. And when the company made the compromise and settlement

with the city in August and September, 1857, it was treated as all merged in the stock subscribed by the city, and if the company had afterwards made a claim on the Days for the balance of the stock, it would have been estopped by its own acts from maintaining such claim. And if, when Putnam, Burke and another filed their bill in this court in 1868 as judgment creditors of the railroad company, it could not be sustained against the city, neither could it against the Days. It therefore follows, that when a decree was rendered, in July, 1869, in this court, for the sum of $9,256 in the aggregate against the Days, as for that amount due to the railroad company by them, and to be paid to Putnam, Burke, et al., there was in fact nothing due to the company. And the question is, whether Putnam, Burke, et al. have obtained any technical advantage by the decree of this court, which will prevent a chancellor from doing equity to the plaintiffs in these bills of review? The case is peculiar in this, that all the other defendants, except the plaintiffs in these bills of review, and upon some of whom no greater liability rested, stand discharged by the judgment of this court and of the supreme court of the United States.

It should be borne in mind that these bills of review were filed long before the decision of the principal case by the supreme court, and when it was not known what the opinion of that court would be. Notwithstanding what has been said about the supposed indebtedness of these plaintiffs to the railroad company, yet being bills of review, these things only are open for examination—errors on the face of the record, or new evidence, which by the exercise of reasonable diligence could not have been known. The rule in force at the time the subpoena was issued to S. C. Day, required the officer to deliver a copy to the defendant personally, or to leave a copy at his dwelling-house or usual place of abode, with some free white person, a member or resident in the family. The service was not in compliance with the rule, for it did not appear, by its terms, that a copy of the subpoena was left with any one. The evidence shows he was absent at the time, and he states he had no knowledge that a subpoena was left at his house, or that his appearance was entered. The appearance by counsel seems to have been an inadvertence, and the counsel say they had no authority to appear for him. It is clear, therefore, that he was not in court, either by proper service of a subpoena, or by an authorized appearance, and a default and decree should not have been entered. He would undoubtedly have had the right to have the decree opened and his defense admitted, as soon as he knew of the decree. There is, therefore, some force in the objection that this ought to have been done, instead of giving bail to an execution under the statute and practice of the court. But it would be a harsh rule to make

the giving of such bail an absolute estoppel, and a release of all errors, when the very purpose might be to enable a party to employ counsel to look into the record and ascertain its condition, and I do not feel inclined to adopt it in this case, even though there might seem to be more delay than was necessary in the application to this court.

Perhaps the second error can scarcely be maintained, as, though it be true that the Floyd circuit court might have had the power to proceed and administer the assets of the railroad company for the benefit of creditors, still it may be said it was not compulsory on the part of the creditors, and that because of this power the creditors were not prevented from making application to this court. But it is not necessary to put the decision on this ground.

When it is said that, in order to sustain a bill of review for error, it must exist in the record, the question naturally occurs, in what part of the record? The answer is, in the bill, answer, other pleadings or decree. A leading authority on this subject, in the supreme court, declares that the evidence at large cannot be examined in order to establish an objection to the decree on the supposed mistake of the court in its conclusions on the evidence. Whiting v. Bank of U. S., 13 Pet. [38 U. S.] 6. But if we assume that the evidence is all in the record, or that according to the English practice, the decree recites the substance of the facts, and there appeared to be no evidence to warrant the decree, conceding that the court cannot act as a court of appeal merely, yet, in such case, there surely would not be much hesitation in reviewing the decision. In this case there was a reference to a master, but he does not state that he took any other evidence than what appears in the record. The decree against the Days refers only to the pleadings. It is quite clear it was founded on the association subscription, for, as to S. C. Day, that was his own liability, and, as to E. R. Day, there was no question of any other. Now, when this court can see, by the answer of the association subscribers, and the evidence in the original case, that there was in fact no just claim on the part of the railroad company against the Days; that they had been released from such claim, if any ever existed, years before the creditors' bill was filed, and even before the judgment was recovered on which it was founded; and that the court dismissed the bill as to persons equally liable with the Days, does such a rule apply? We think not. It is manifest that the mind of the court was not directed to the point, and it may, therefore, be truly said it is not an error founded on any supposed mistake of the court in its deductions from the evidence, but on an inadvertence. (See the answer of Thomas L. Smith, and twenty-seven others, in the original case.) The supreme court decided that the creditors' bill came too late as to the city of New Albany. This was an er-

ror that appeared on the face of the record, and it follows that this court ought, in the opinion of the supreme court, so to have decided. And the question is whether the same law is not applicable to the plaintiffs in these bills of review. This defense was not distinctly made in the answer of the city of New Albany, farther than to mention that the settlement between the railroad company and the city had never been called in question until the creditors' bill, filed by Putnam, Burke, et al., though known to them at the time. But it was one of the grounds on which the supreme court decided the case, and, of course, on which this court ought to have decided it. And it necessarily follows, I think, that as to the Days, this court should have decided it in the same way. It was an objection to rendering a decree for the plaintiff in the original suit, which on the record the court ought to have taken of its own motion. For more than fourteen years before Putnam, Burke, et al. filed their bill in this court, the railroad company had ceased to regard any of the subscribers in the association stock as debtors. When each man paid three hundred dollars after the subscription by the city, the claim was at an end. The charge of laches, therefore, was as applicable to this settlement as to that between the railroad and the city, and even more so, because it was prior in time.

In conclusion it may be said that there is only a technicality on which the decree against the Days can stand; if they are compelled to pay this money, now more than ten thousand dollars, it will be for what was not owed, and a court of equity, ought, I think, under such circumstances, to go to the very verge of its authority to prevent such a result.